UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

THE MONEY SOURCE INC.,

        Plaintiff,

- against –

OMEGA FINANCIAL SERVICES, INC.,

        Defendant.

---------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff The Money Source Inc. ("TMS" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant Omega Financial Services, Inc. ("OFS" or "Defendant"), hereby respectfully alleges as follows:

## INTRODUCTION

1. Pursuant to the parties' Correspondent Loan Purchase Agreement dated as of February 27, 2012 by and between TMS and OFS (the "Agreement"), OFS sold certain loans to TMS.

2. Under the terms of the Agreement, TMS was and is entitled for OFS to repurchase a loan if an event of default has occurred with respect to a specific loan. An event of default occurred under at least one of the loans purchased by TMS.

3. An indisputable event of default occurred under the Mortgage related to a loan for the borrower Baranek (the "Baranek Loan") and under the Agreement when Baranek failed to disclose all liabilities in the final application at closing.

4. OFS failed to repurchase that loan as required by the Agreement despite TMS' written demand. As a result, TMS is entitled to the value of OFS repurchasing the Baranek Loan

equal to $497,972.55 in unpaid principal balance, interest, fees and costs, plus attorneys' fees, costs and expenses in bringing suit.

5. Accordingly, Plaintiff hereby brings the instant action in connection with Defendant's failure to repurchase the Baranek Loan and for losses incurred in connection with same.

**PARTIES, JURISDICTION AND VENUE**

6. Plaintiff TMS is a New York corporation with a principal place of business located at 3138 E. Elwood Street, Phoenix, Arizona 85034. During at least a portion of the relevant time period, TMS was headquartered in Melville, New York.

7. Upon information and belief, Defendant OFS is a New Jersey corporation with a principal place of business located at 1185 Morris Avenue, Union, New Jersey 07083.

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This court has personal jurisdiction over OFS because, according to the Agreement, "This Agreement. . . shall be deemed to have been made in the State of New York." Further, OFS transacts business in New York.

10. Venue in proper in this District pursuant to 18 U.S.C. § 1391(b) and (c) because according to the Agreement, "This Agreement. . . shall be deemed to have been made in the State of New York" at TMS's offices in Melville, Suffolk County, New York.

11. Pursuant to the Agreement, "the Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties

hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law."

## FACTUAL ALLEGATIONS

12. Upon information and belief, OFS is in the business of originating, processing, funding, and closing loans secured by residential real estate. Pursuant to the Agreement, OFS would sell loans to TMS and submitted loan packages to TMS for possible purchase.

13. Under the Agreement, OFS made certain representations and warranties with respect to OFS and the mortgage loans sold to TMS (*e.g.* the Baranek Loan).

14. In that portion of the Agreement entitled "Warranties as to the Mortgage Loans," OFS represented and warranted in paragraph H that: "There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time. . . would constitute a default, breach, violation or event permitting acceleration . . . [.]

15. The Mortgage related to the Baranek Loan states "Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower . . . gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan."

16. Section A under the "Repurchase" section of the Agreement states, in pertinent part:

> The Money Source has the right to demand that [OFS] repurchase a Loan . . . if an Event of Default has occurred with respect to a specific Loan.

\*   \*   \*

> If The Money Source demands that [OFS] repurchase a Loan, [OFS] agrees to repurchase the Loan . . . for the repurchase price within 30 days of receiving The Money Source's written demand. If The Money Source determined in its discretion that repurchase of a Loan and its servicing is not appropriate, [OFS] must pay The Money Source all losses, costs and expenses (including reasonable attorney's fees and enforcement costs) incurred by The Money Source and the Loan's servicer as a result of the Event of Default.

17. Paragraph B under the "Repurchase" section of the Agreement set forth how the repurchase price is to be calculated.

18. The Agreement states, with respect to indemnification, as follows:

> [OFS] shall indemnify The Money Source from all liabilities, obligations, losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, suits and any other costs, fees and expenses, directly or indirectly resulting from or arising out of (a) an Event of Default . . . (c) any breach of a representation, warranty, or covenant made by The Money Source in reliance upon any representation, warranty or covenant made by [OFS], or (d) The Money Source's enforcement of the Correspondent Contract, including this Correspondent Agreement.

**An Event of Default Occurred Under the Mortgage
of the Baranek Loan and Under the Agreement**

19. On or about June 26, 2019, TMS purchased the Baranek Loan from OFS.

20. The Baranek Loan was due on April 4, 2020 but was in Covid-19 forbearance until on or about October 1, 2021.

21. On or about August 4, 2020, TMS received an initial defect notice from Fannie Mae ("FNMA") stating a repurchase demand would be issued on the Baranek Loan due to an undisclosed liability.

22. FNMA obtained a credit report that reported an additional monthly debt which was not disclosed on the final loan application at closing, resulting in a revised and defective debt-to-income ratio (the "Undisclosed Liability").

4

23. TMS appealed the defect notice, which was denied by FNMA. FNMA then issued an official repurchase demand on or about August 18, 2020, which gave OFS sixty (60) days to repurchase the Baranek Loan.

24. The Undisclosed Liability constitutes a materially false, misleading, or inaccurate information and/or material information that was withheld constituting a breach of a representation and warranty under the Mortgage, and, therefore, an event of default under the Mortgage.

25. Because OFS falsely and inaccurately represented and warranted that no default, breach or violation existed under the mortgage, an event of default also occurred under the terms of the Agreement.

**OFS Refused to Repurchase the Baranek Loan Despite TMS's Due Demand**

26. On or about October 6, 2020, TMS issued a formal repurchase demand for the Baranek Loan.

27. In response, in or about November 2020, OFS requested additional time from TMS to refinance the Baranek Loan in lieu of repurchase, which TMS granted.

28. In or about February 2021, OFS advised TMS that refinance efforts failed.

29. From March 2021 through May 2022 -- during which time the Baranek Loan came out of forbearance, went into delinquency, and failed to qualify for loss mitigation -- TMS made several written demands that OFS repurchase the Baranek Loan or authorize TMS to accept a "scratch and dent" bid.

30. OFS repeatedly refused to repurchase the Baranek Loan and stated it would not accept or pay an invoice to cover TMS's losses from a scratch and dent bid.

31. Because OFS failed to timely satisfy a repurchase demand, a separate event of default occurred under paragraph X of the Default section of the Agreement ("Any one or more of the following events constitutes an Event of Default: . . . (X) Correspondent's failure to repurchase any Loan within the required timeframe.").

32. To date, OFS has failed to repurchase the Baranek Loan and/or to otherwise remove the loan from TMS's books whether by refinance, sale, or satisfaction.

## FIRST COUNT
### (Breach of Contract)

33. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

34. The Agreement is a valid, binding and enforceable agreement.

35. At all times relevant herein, Plaintiff has duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by it in accordance with the terms and conditions of the Agreement.

36. Among other things, Defendant breached certain of its representations and warranties with respect to the loan(s) identified in this Complaint. These breaches materially and adversely affected the value of this loan.

37. Defendant received notice of these breaches of its representations and warranties and of TMS's repurchase demand.

38. Defendant has failed to timely repurchase the loan(s) as required, and has otherwise failed to remedy the breach, whether by refinance, sale, satisfaction, or by other means.

39. As a direct and proximate result of the foregoing, Plaintiff seeks actual, incidental, compensatory, and consequential damages (plus reasonable attorneys' fees and interest), in an amount to be proven at trial, but believed to be no less than $497,972.55.

## SECOND COUNT
### (Quantum Meruit)

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. Plaintiff purchased the aforementioned loan based on the representations and warranties of Defendant, and with the agreement that Defendant is required to repurchase a loan upon Plaintiff's due demand upon a breach, violation, or event of default occurring under the loan or the Agreement.

42. Defendant accepted Plaintiff's payment for the loan.

43. As Defendant was well aware, Plaintiff expected the representations and warranties of Defendant to be truthful and accurate, and expected that the aforementioned loan would be repurchased upon demand.

44. The reasonable value of the losses incurred by Plaintiff is substantial and in an amount to be proven at trial.

45. As a direct and proximate result of the foregoing, Plaintiff seeks actual, incidental, compensatory, and consequential damages (plus reasonable attorneys' fees and interest), in an amount to be proven at trial but believed to be no less than $497,972.55.

## THIRD COUNT
### (Promissory Estoppel)

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Defendant clearly and unambiguously promised that it would repurchase a loan if an event of default occurred under the loan or the Agreement.

48. Plaintiff reasonably relied to its detriment upon Defendant's promises, and such reliance was foreseeable by Defendant. Justice requires enforcement of Defendant's promises.

49. The reasonable value of the loan and losses incurred is substantial and in an amount to be proven at trial.

50. As a direct and proximate result of the foregoing, Plaintiff seeks actual, incidental, compensatory, and consequential damages (together with reasonable attorneys' fees and interest), in an amount to be proven at trial but believed to be no less than $497,972.55.

## FOURTH COUNT
### (Unjust Enrichment)

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. Plaintiff purchased certain aforementioned loans in connection with the Agreement.

53. Defendant received substantial value and enrichment as a result of its receipt of funds from or on behalf of Plaintiff which was based on the truth and accuracy of the representations and warranties of Defendant.

54. The value received by Defendant was at the expense of Plaintiff.

55. Equity and good conscience require restitution to Plaintiff.

56. Defendant has been unjustly enriched in an amount to be proven at trial.

57. As a direct and proximate result of the foregoing, Plaintiffs seek actual, incidental, compensatory, and consequential damages (together with reasonable attorneys' fees and interest), in an amount to be proven at trial but believed to be no less than $497,972.55.

## FIFTH COUNT
**(Indemnification)**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

59. The Agreement is a valid, binding and enforceable agreement.

60. At all times relevant herein, Plaintiff has duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by it in accordance with the terms and conditions of the Agreement.

61. In the Agreement, Defendant undertook to indemnify Plaintiff "from all liabilities, obligations, losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, suits and any other costs, fees and expenses, directly or indirectly resulting from or arising out of (a) an Event of Default . . . [and] (d) The Money Source's enforcement of the . . . this [ ] Agreement."

62. Plaintiff sustained and will continue to sustain losses, costs, fees and expenses arising from breaches of Defendant's representations and warranties and to Defendant's failure to satisfy its obligations under the Agreement.

63. Defendant therefore must indemnify Plaintiff for any and all losses, costs, fees and expenses, including but not limited to reasonable attorneys' fees.

64. As a direct and proximate result of the foregoing, Plaintiff seeks actual, incidental, compensatory, and consequential damages (plus reasonable attorneys' fees and interest), in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff respectfully requests that the Court grant the following relief:

a. Specific performance of Defendant's repurchase obligations with respect to the loan(s);

b. Actual, incidental, compensatory, and consequential damages for any and all losses incurred by Plaintiff;

c. Fees, costs and expenses, including, but not limited to reasonable attorneys' fees;

d. Prejudgment interest at the maximum legal rate; and

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York  
June 23, 2022

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Alan F. Kaufman*  
　　Alan F. Kaufman  
　　Lisa A. Herbert

280 Park Avenue, 15th Floor West  
New York, NY 10017  
Tel. (646) 426-2600  
Email: alan.kaufman@nelsonmullins.com  
Email: lisa.herbert@nelsonmullins.com  
*Attorneys for Plaintiff The Money Source Inc.*